IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2007 Session

**STACEY DEWAYNE RAMSEY v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Carroll County**
**No. 93CR561    Julian P. Guinn, Judge**

**No. W2006-01827-CCA-R3-PC  - Filed September 3, 2008**

The petitioner, Stacy Dewayne Ramsey, was convicted by a jury in the Montgomery County Circuit Court of first degree murder, and he received a sentence of life without the possibility of parole. Thereafter, he filed a petition for post-conviction relief, alleging due process violations, newly discovered evidence, and numerous claims of ineffective assistance of counsel. After a hearing on the petition, the post-conviction court denied relief, finding that the petitioner had failed to prove that any relief was warranted. The petitioner appeals that ruling. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Stacy Dewayne Ramsey.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; and Hansel Jay McCadams, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The petitioner was indicted by the Carroll County Grand Jury for the first degree murder of Dennis Brooks, Jr.  At the petitioner's request, venue was changed, and the trial was held in Montgomery County.  The proof at the petitioner's trial revealed that he, and co-defendants Walter Steve Smothers and Teresa Deion Smith Harris planned to beat Harris' ex-boyfriend, David Hampton.  On the way to Hampton's residence, the petitioner's truck overheated.  Therefore, the petitioner, Smothers, and Harris decided to take the next vehicle that passed them on the road, agreeing that they might have to kill the driver of the vehicle.  The petitioner, Harris, and Smothers grabbed the victim, the driver of the vehicle that Harris flagged down, and put him in his truck.  The three co-defendants got into the truck and began driving.  They shot the victim in the left hip with

a shotgun, and the victim began screaming. They told the victim to stop screaming and they would take him to a hospital. The victim screamed more, and Smothers used the shotgun to shoot the victim under the chin, killing him. Thereafter, the petitioner suggested that they bury the victim. The trio decided to cut off the victim's legs to make burial easier. Further, the autopsy revealed that one of the victim's arms and his penis were also amputated. At Harris' behest, Smothers removed the victim's heart, and all three held the victim's heart to their mouths. Additionally, they repeatedly stabbed the victim post-mortem with a butcher knife. Next, they poured oil and gasoline on the victim and his truck and set both ablaze. The petitioner was later discovered wearing the victim's shoes and possessing the victim's shaving kit containing tools. The petitioner was convicted of the first degree murder of Brooks, and he received a sentence of life without the possibility of parole. On appeal, this court affirmed the petitioner's conviction and sentence. State v. Stacy Dewayne Ramsey, No. 01C01-9412-CC-00408, 1998 WL 255576, at **1-4 (Tenn. Crim. App. at Nashville, May 19, 1998).

Subsequently, the petitioner filed in the Montgomery County Circuit Court a petition for post-conviction relief, alleging numerous claims of ineffective assistance of counsel. The court summarily dismissed the petition. This court reversed the Montgomery County Circuit Court's summary dismissal of the post-conviction petition and remanded for further proceedings. See Stacy Dewayne Ramsey v. State, No. M2003-02969-CCA-R3-PC, 2005 WL 123480, at *2 (Tenn. Crim. App. at Nashville, Jan. 21, 2005). On remand, the Montgomery County Circuit Court transferred the case to the Carroll County Circuit Court for a post-conviction hearing before the original trial judge.

Prior to the hearing, the petitioner filed two amended post-conviction petitions, alleging numerous claims of ineffective assistance of counsel. The petitioner contended that because of the extent of counsel's errors, prejudice should be presumed. He also claimed that his due process rights were violated by various jury instructions given by the trial court. He further alleged that he had newly discovered evidence in the form of a letter from co-defendant Smothers to co-defendant Harris recanting his trial testimony and asserting that the petitioner was innocent.

The petitioner's post-conviction counsel filed numerous requests for continuances, contending that the trial court could not locate the entire original trial record, and, therefore, he was unable to sufficiently review the record to determine the petitioner's possible post-conviction issues. At a hearing on January 30, 2006, post-conviction counsel told the post-conviction court that "there [have] been some comments that a tornado struck the courthouse in Clarksville and possibly the records were lost." Therefore, post-conviction counsel maintained that "we're here today for [the petitioner's] claim that he's being denied postconviction relief because his records are lost and destroyed."

The post-conviction court acknowledged that the Montgomery County Courthouse was "destroyed by a tornado. . . . And in terms of the records, . . . whether they survived or not, I don't know but that's really pretty relatively immaterial. Because the original transcript should be on file with the clerk of the court of criminal appeals or the clerk of the supreme court." Post-conviction counsel stated that he had checked with the trial court and with the clerk of the Court of Criminal Appeals, and he stated that "all of those people tell me [the record] is at a different place." He said,

"I've talked to the supreme court, and I've been to the court of appeals here, I don't think his records are going to show back up. I can't find them anywhere."

The State then informed the court that the petitioner's trial counsel had copies of the petitioner's trial transcript. Trial counsel told the court that "what I have is what was provided for me for the appeal of this case. It is a certified copy directly from the court reporter." Trial counsel noted that the copy he possessed had not been stamped filed. The post-conviction court said, "[W]e are not about to get concerned with that. You've got an attested copy, that's good enough."

At the post-conviction hearing on June 22, 2006, post-conviction counsel called an employee of the Carroll County Circuit Court Clerk's Office who testified that she photocopied all records pertaining to the case that were in the clerk's office, consisting of "the transcripts and the court file that's on file that are basically the trial transcripts." When asked if the copies contained the complete transcript of the trial, the clerk testified, "That's what [the petitioner's trial counsel] gave me to copy."

Regarding his claim of newly discovered evidence, the petitioner called co-defendant Smothers to testify about a letter Smothers wrote to Harris recanting his trial testimony. Smothers testified that the allegations in his letter were untrue. Smothers explained that he had written the letter merely to get out of prison for a trip to court. Smothers refused to testify further.

The parties stipulated that one of the petitioner's trial counsel was deceased at the time of the post-conviction hearing. However, the petitioner's second trial counsel, who was the son of deceased counsel, testified at the post-conviction hearing. Counsel stated that the goal at trial was to get a not guilty verdict or, in the alternative, a conviction for a lesser offense. After the petitioner was found guilty of first degree murder, counsel's objective was to spare the petitioner the death penalty. Ultimately, the jury rejected the death penalty but imposed a sentence of life without the possibility of parole.

On direct examination, counsel stated that prior to trial, the defense filed a motion "to exclude the post-death facts." However, the trial court overruled the motion. Thereafter, the defense made a deliberate choice to reference post-death facts in front of the jury as little as possible so as not to "draw more attention to them."

Counsel acknowledged that Smothers had recanted the testimony he gave at the trials of Harris and the petitioner. However, counsel recalled that Smothers had later asserted that his recantation was false and that his trial testimony was true.

Counsel recalled that at trial, the defense attempted to present proof of the petitioner's diminished capacity; however, "[t]he jury did not agree with our assessment." Regardless, counsel believed that "we did the best job we could do that anyone could ask." Counsel acknowledged that the petitioner's case was "difficult." Counsel asserted, "I don't think we would do anything different today than we would back then."

Trial counsel said that he provided a copy of the petitioner's trial transcript to the clerk's office, and he assumed that post-conviction counsel was provided a copy. Trial counsel acknowledged that he did not know where the physical evidence and exhibits introduced at trial were.

The petitioner did not testify at the post-conviction hearing.

The petitioner's post-conviction counsel again told the court that he had been unable to obtain the original transcripts and exhibits of the petitioner's trial; however, he submitted an attested copy of the petitioner's trial transcript that he had received from trial counsel via the clerk's office, and he also submitted portions of Harris' trial transcript. Post-conviction counsel did not make any argument at the conclusion of the post-conviction hearing, opting to rest upon the pleadings.

After the conclusion of the post-conviction hearing, the post-conviction court entered an order finding that the allegations of ineffective assistance contained in the post-conviction petition were either previously determined, waived, unfounded, or merely challenges to trial strategy. Regarding the petitioner's claims of due process violations, the post-conviction court found that "[t]here is nothing to be found in these allegations that amounts to a denial of due process or even suggests the presence of such an error or errors." Further, the court found that Smothers "affirmed his trial testimony"; therefore, the petitioner's claim of newly discovered evidence was baseless. The post-conviction court concluded, "Quite simply stated, there was no evidence of any sort adduced at the hearing of this matter that would in any way indicate that trial counsel was ineffective or petitioner was denied due process." Finally, the post-conviction court determined that "there is . . . nothing whatsoever to be found in the evidence produced at this hearing or anywhere in the record of this case that would suggest that the petitioner was denied any constitutional right."

On appeal, the petitioner argues that he is entitled to post-conviction relief because his trial counsel were ineffective, because of the newly discovered evidence of Smother's recantation of his trial testimony, and "because of a total denial of due process, being that post-conviction relief is totally unavailable, because the complete original trial record was lost, destroyed or otherwise unavailable for use by post conviction counsel." The petitioner also raises "[g]eneral claims" relating to the denial of due process at trial.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings

of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

In his brief, the petitioner raises at least eighty-three "errors and omissions by trial counsel [that were] deficient and prejudicial" and argues that the errors should be "presumed prejudicial." The claims are presented in list form. This court has previously observed:

> There are two schools of thought concerning appellate practice. One is the "shotgun approach." The other is the "rifle shot approach." Under the shotgun approach the appellate counsel raises a multitude of issues and fires them shotgun style at the appellate court, with the hope that one of the issues will find its mark and reversal will be granted. Under the rifle shot approach counsel choose their best issues and thoroughly brief them, also with the intent of getting the appellate court to reverse the conviction. Neither is necessarily the best method, but the rifle shot approach is preferred by most appellate judges, since their time and the time of their research assistants can be better spent in intensive research regarding a few well crafted

> issues rather than spending their time studying a wide spectrum of
> issues with very few, if any, having any merit.

Charles A. Butler v. State, No. 03C01-9207-CR-00250, 1995 WL 56357, at *3 (Tenn. Crim. App. at Knoxville, Feb. 13, 1995).

The instant case is a textbook example of an unsuccessful use of the "shotgun approach," which was employed both in the lower court and on appeal.[1] Instead of fleshing out issues which may have had merit, the petitioner instead raised a multitude of claims of ineffective assistance in list form without citation to supporting authority or any argument regarding why the action or inaction of counsel was deficient or how the alleged deficiency prejudiced the petitioner. Moreover, at the post-conviction hearing the petitioner relied upon his summary allegations without presenting any argument or meaningful proof to support his claims. The petitioner merely submitted to the post-conviction court his extensive list of issues and a voluminous record with the general argument that prejudice should be presumed. As the post-conviction court noted, most of the petitioner's issues were previously determined or waived. The evidence does not preponderate against the post-conviction court's findings. Therefore, the petitioner has failed to prove that his trial counsel were ineffective.

The petitioner also alleges that he is entitled to a new trial based upon newly discovered evidence, namely Smothers' recantation of his trial testimony in a letter he wrote to Harris. Initially, we note that generally claims of newly discovered evidence should be addressed in a petition for a writ of error coram nobis and are not properly the subject for post-conviction review. Tenn. Code Ann. § 40-26-105 (2003). Moreover, Smothers testified at the post-conviction hearing that the recantation letter was full of lies. This issue is without merit.

Additionally, the petitioner complains that he "is entitled to post conviction relief and a new trial, because of a total denial of due process, in that post-conviction relief is totally unavailable, in that the complete original trial record was lost, destroyed or otherwise unavailable for use by post conviction counsel." The petitioner repeatedly requested continuances in order to attempt to obtain the original record. We note that while the petitioner claims his ability to pursue post-conviction relief was crippled due to his inability to obtain the original trial record and a complete transcript, not only was a transcript available from this court, but also the petitioner had a copy of the trial transcript that he obtained from the petitioner's trial counsel. Further, as the post-conviction court aptly noted, the petitioner "fail[ed] to identify what he was unable to obtain, where it is located, and, if indeed, it exists" and he "fail[ed] to specify any exhibit or exhibits that could have an effect in this proceeding." Indeed, the entire appellate record of the petitioner's direct appeal was readily available. In sum, the post-conviction court found "[t]here is nothing to be found in [the petitioner's] allegations that amounts to a denial of due process or even suggests the presence of such an error or errors." We agree with the post-conviction court. The petitioner is not entitled to relief on this issue.

---

[1] Due to the nature of the petitioner's brief, we find no need to set out in detail the petitioner's numerous allegations.

The petitioner also uses the "shotgun approach" to raise issues regarding due process violations. The petitioner claims that the trial court erred in making certain evidentiary rulings, giving jury instructions, and sentencing the petitioner. He also raises several claims regarding the sufficiency of the evidence. Most of these issues were previously determined by this court on direct appeal. See Tenn. Code Ann. § 40-30-106(h); Cole v. State, 798 S.W.2d 261, 264-65 (Tenn. Crim. App. 1990). Moreover, none of these issues are a proper basis for post-conviction relief. See Tenn. Code Ann. § 40-30-106(g); Forrest v. State, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976).

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE